UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,　　Plaintiff,　v.　EDWARD E. MATTHES,　　Defendant. | Case No. 2:20-cv-125　Jury Trial Demanded |

# COMPLAINT

Plaintiff, the United States Securities and Exchange Commission ("Commission") alleges as follows:

## SUMMARY OF THE ACTION

1. Between April 2013 and March 2019, Defendant Edward E. Matthes defrauded 26 of his mostly elderly retail brokerage customers and investment advisory clients out of approximately $2.4 million. During that time period, Matthes worked as a registered representative and investment adviser representative with a nationwide financial services firm dually registered with the Commission as a broker-dealer and investment adviser ("Registered Entity A").

2. Matthes lied to his customers and clients in order to convince them to invest in what he described as a safe investment offered by Registered Entity A that would earn a guaranteed minimum yield of 4% per year. Matthes then convinced his customers and clients to transfer approximately $1.4 million to him to fund the investments at Registered Entity A. Matthes' statements were false. In reality, the purported investment did not exist. Matthes did

not invest his customers' and clients' money and instead stole it for his personal use. To cover up his fraud, Matthes created and provided several of his customers and clients with fake account statements on Registered Entity A letterhead.

3. Matthes stole an additional $1 million from his brokerage customers by making unauthorized sales and withdrawals from variable annuity contracts that they held in accounts with him. Matthes spent the misappropriated funds on personal expenses, including home renovation expenses, car payments, and luxury items, and also used approximately $170,000 to make Ponzi-like payments to certain investors to keep his fraudulent scheme alive.

4. By engaging in this conduct, Matthes violated Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5], and Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this action pursuant to Sections 20 and 22 of the Securities Act [15 U.S.C. §§ 77t and 77v], Sections 21 and 27 of the Exchange Act [15 U.S.C. §§ 78u and 78aa], and Sections 209 and 214 of the Advisers Act [15 U.S.C. §§ 80b-9 and 80b-14].

6. Venue is proper in this Court pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v], Section 27 of the Exchange Act [15 U.S.C. §78aa], and Section 214 of the Advisers Act [15 U.S.C. § 80b-14] because certain of the acts, practices, and courses of business constituting the violations alleged in this Complaint occurred within the jurisdiction of the United States District Court for the Eastern District of Wisconsin. In addition, during the

relevant time period, Matthes resided and conducted business within the Eastern District of Wisconsin.

7. Matthes, directly or indirectly, made use of the means or instruments of transportation or communication in interstate commerce, or the means or instrumentalities of interstate commerce, or of the mails, or of any facility of any national securities exchange in connection with the acts, practices, and courses of business alleged herein.

## DEFENDANT

8. **Edward E. Matthes**, age 49, resides in Pewaukee, Wisconsin. Matthes was a registered representative at Registered Entity A in a one-person branch office in Oconomowoc, Wisconsin from March 2012 until his termination on March 12, 2019. Matthes also was an investment adviser representative at Registered Entity A from February 2014 through his termination on March 12, 2019. During the relevant period, Matthes held Financial Industry Regulatory Authority ("FINRA") Series 6, 7, 63, and 65 licenses. On March 22, 2019, FINRA permanently barred Matthes from association with any FINRA member. On May 10, 2019, the State of Wisconsin Department of Financial Institutions Securities Division permanently barred Matthes from obtaining a securities license in the State of Wisconsin.

## FACTS

9. Beginning in April 2013, Matthes began stealing from certain of his retail brokerage customers, three of whom were also his investment advisory clients. Between April 2013 and March 2019, Matthes misappropriated approximately $2.4 million from 26 of his customers and clients.

10. Most of the victims targeted by Matthes were elderly and lacked investing experience. Many of Matthes' victims had been his customers and clients for several years, and trusted Matthes to manage their investments.

**Fictitious Fixed Investments**

11. Starting in 2013, Matthes began telling certain of his brokerage customers during in-person meetings and telephone calls that he had a new investment opportunity through Registered Entity A that would generate a higher return than certain variable annuity contracts he previously had sold them. Matthes described the investment opportunity as a safe "fixed investment" offered by Registered Entity A that would earn a guaranteed minimum annual yield of 4%, and could possibly provide higher returns in the future. Matthes provided his customers with few additional details regarding the investment opportunity and did not provide them with any documentation. In reality, the fixed investment did not exist and Matthes used all of the funds he raised for his own personal use and to make Ponzi-like payments to certain customers.

12. Relying on Matthes' oral representations, 15 customers sold or authorized Matthes to sell, in part or whole, the securities underlying their variable annuities and received the proceeds, minus surrender fees and other charges, directly from the annuity provider. Several of the customers targeted by Matthes held their variable annuities in tax-advantaged retirement accounts.

13. In order to hide his fraud from Registered Entity A and others, Matthes instructed his customers during in-person meetings or by text messages to give him checks for the fictitious investment written to "Edward Matthes c/o [Registered Entity A]" or "E. Matthes Fin c/o [Registered Entity A]". Matthes told one customer that the payee name was his "office clearing house entity with home office."

14. Matthes also convinced eight of his brokerage customers to withdraw money from their personal savings accounts for investment in the fictitious fixed investment with Registered Entity A. The money for these transfers came from, among other things, life insurance proceeds, inheritance proceeds, house sales, and land sales.

15. In 2018, Matthes also made false statements to three of his investment advisory clients at Registered Entity A, all of whom were also brokerage customers, in order to convince them to sell securities from their managed portfolios with a third-party investment adviser and transfer the proceeds to him for investment in the fictitious fixed investment with Registered Entity A. At the time of the transfers, the clients relied upon Matthes for investment advice.

16. Matthes deposited his customers' and clients' checks, totaling approximately $1.4 million, into a new personal checking account that he had opened for himself in April 2013.

17. After depositing the checks into his personal bank account, Matthes perpetuated his scheme by making additional false statements to his customers and clients. Among other things, Matthes provided certain of his customers and all three advisory clients with fake account statements on Registered Entity A letterhead that listed the fictitious fixed income investment, the promised interest payments, and the investment's steady growth. Matthes also provided at least three of his customers with fake Forms 1099-R showing that they did not owe any federal taxes on withdrawals from their individual retirement accounts.

18. Matthes made other false statements to many of his customers and clients regarding the purported fixed investments, including telling them that:

   a. The fixed investment had "no risk" and was "guaranteed never to lose money."

   b. The fixed investment was "a bright spot in the investment landscape."

    c. The fixed investment would be held in a "new" or "more safe and secure account" with Registered Entity A.

19. Matthes also lied to Registered Entity A when its Anti-Money Laundering division flagged a withdrawal from one of Matthes' investment advisory clients' accounts as inconsistent with her account objective of long-term investing. After receiving the inquiry, Matthes emailed his supervisor and falsely stated that the client "indicated that she would like to make a withdrawal to complete some home repairs that she is behind on and pay off her car . . . . There was no reinvestment considered or proposed in this situation." In reality, Matthes misappropriated the client's funds and deposited them in his personal bank account.

20. Matthes acted deliberately, with the intent to deceive. He knew that the investment he described to his customers and clients did not exist, and he never invested any of the money he raised in the promised investment.

## Unauthorized Variable Annuity Sales and Withdrawals

21. From April 2013 through March 2019, Matthes also misappropriated approximately $1 million from ten of his brokerage customers, several of whom also invested in the fictitious fixed investment, through the unauthorized sale of securities and withdrawals from their variable annuity contracts.

22. Prior to selling variable annuities to his customers, Matthes typically provided the customers with partially-filled out annuity applications and asked them to complete and sign the forms. In certain of the applications, however, Matthes surreptitiously included the routing and account number for his personal bank account instead of his customers' account information. Matthes also surreptitiously included his personal bank account information on withdrawal forms signed by certain of his customers.

23. In addition, Matthes checked a box on the annuity applications that allowed him, as the broker of record, to act on behalf of his customers via telephone or other electronic communications directly with the annuity provider.

24. Throughout the time period, Matthes sold securities underlying the annuity contracts held by certain of his customers and deposited the proceeds into his personal bank account. Although certain of Matthes' customers were aware that Matthes was permitted to act on their behalf with regard to the variable annuities, none of them authorized Matthes to include his personal bank account information on their account opening and withdrawal forms or to transfer their funds to his personal bank account.

## Use of Misappropriated Funds

25. Instead of using his customers' and clients' funds as promised, Matthes used the majority of the approximately $2.4 million that he misappropriated, including approximately $2.17 million between October 2014 and March 2019, for personal expenses, including his credit card payments, mortgage payments, car payments, child support, luxury items and gifts, and home renovation expenses. In order to keep his scheme alive, Matthes also used approximately $170,000 to make Ponzi-like payments to certain of his customers.

## Matthes' Fraud Was Uncovered

26. In March 2019, one of Matthes' customers complained to FINRA about an account statement that appeared to be fake. After FINRA contacted Registered Entity A regarding the account statement, Registered Entity A conducted an internal review, which included an unannounced visit to Matthes' office on March 11 and 12, 2019. Based upon its review, Registered Entity A concluded that Matthes had diverted customer and client funds to his

personal bank account and created fictitious account statements for multiple customers and clients.  Registered Entity A terminated Matthes on March 12, 2019.

## COUNT ONE

### Violations of Sections 17(a) of the Securities Act
### [15 U.S.C. § 77q(a)]

27. The Commission realleges and incorporates by reference paragraphs 1 through 26.

28. Matthes, in the offer or sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce, or by the use of the mails, directly or indirectly, knowingly, willfully, or recklessly:  (a) employed devices, schemes, and artifices to defraud; (b) obtained money or property by means of an untrue statement of material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, or courses of business which operate or would operate as a fraud or deceit upon the purchasers and prospective purchasers of such securities.

29. By engaging in the conduct described above, Matthes violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## COUNT TWO

### Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)]
### and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]

30. The Commission realleges and incorporates by reference paragraphs 1 through 26.

31. Matthes, directly or indirectly, by the use of the means and instrumentalities of interstate commerce, or of the mails, or of any facility of any national securities exchange, in

connection with the purchase or sale of securities, knowingly, willfully, or recklessly: (a) used or employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud and deceit upon purchasers and prospective purchasers of the securities offered and sold by Matthes.

32. By engaging in the conduct described above, Matthes violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## COUNT THREE

### Violations of Sections 206(1) and 206(2) of the Advisers Act
### [15 U.S.C. §§ 80b-6(1) and 80b-6(2)]

33. The Commission realleges and incorporates by reference paragraphs 1 through 26.

34. Matthes, while acting as an investment adviser, directly or indirectly, by use of the mails or means or instrumentalities of interstate commerce, knowingly, willfully, or recklessly: (a) employed devices, schemes, or artifices to defraud his clients; and (b) engaged in transactions, practices, or courses of business that operated as a fraud or deceit upon clients.

35. By engaging in the conduct described above, Matthes violated Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that this Court:

### I.

Issue findings of fact and conclusions of law that Matthes committed the violations charged and alleged herein.

- 9 -
Case 2:20-cv-00125-LA   Filed 01/28/20   Page 9 of 11   Document 1

**II.**

Enter an Order of Permanent Injunction restraining and enjoining Matthes, his officers, agents, servants, employees, attorneys, and those persons in active concert or participation with Matthes who receive actual notice of the Order, by personal service or otherwise, and each of them from, directly or indirectly, engaging in the transactions, acts, practices, or courses of business described above, or in conduct of similar purport and object, in violation of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j] and Rule 10b-5 thereunder [17 CFR § 240.10b-5], and Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

**III.**

Order Matthes to disgorge the ill-gotten gains that he received as a result of the violations alleged in this Complaint, plus prejudgment interest.

**IV.**

Order Matthes to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

**V.**

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable applications or motions for additional relief within the Court's jurisdiction.

**VI.**

Grant such other and further relief as the Court deems appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission hereby requests a trial by jury on all issues so triable.

Dated: January 28, 2020

Respectfully Submitted,

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**

  s/ Som P. Dalal
John E. Birkenheier, Illinois Bar No. 6270993
Anne C. McKinley, Illinois Bar No. 6270252
Som P. Dalal, Illinois Bar No. 6296172
Attorneys for Plaintiff
United States Securities and Exchange Commission
Chicago Regional Office
175 West Jackson Blvd., Suite 1450
Chicago, Illinois 60604
Telephone: (312) 353-7390
Fax: (312) 353-7398
BirkenheierJ@sec.gov
McKinleyA@sec.gov
DalalS@sec.gov